*Formatted for Electronic Distribution*                                          *Not for Publication*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT**



_____

In re:

      **ROME FAMILY CORPORATION,**        Chapter 7 Case
                       **Debtor.**                        # 02-11771

Filed & Entered
On Docket
December 03, 2007

_____

**NANAK HOSPITALITY, LLC,**
                       **Plaintiff,**
    v.

**HASKINS GAS SERVICE, INC.,**        Adversary Proceeding
                       **Defendant.**               # 07-1010

_____

*Appearances:*     James B. Anderson, Esq.     Richard A. Lang, Jr., Esq.
                        Ryan, Smith & Carbine, Ltd.   Bauer, Gravel, Farnham, Nuovo,
                        Rutland, Vt.                     Parker & Lang
                        For the Plaintiff             Burlington, Vt.
                                                                                                               For the Defendant

<u>**MEMORANDUM OF DECISION
DENYING BOTH PARTIES' CROSS-MOTIONS FOR JUDGMENT ON THE PLEADINGS,
AND THE DEFENDANT'S MOTIONS FOR RELIEF
PURSUANT TO RULE 12(B)(1) AND RULE 60(B)(6)**</u>

**INTRODUCTION**

      Pursuant to this Court's May 25, 2004 Order Authorizing Sale (case # 02-11771, doc. # 182), Debtor Rome Family Corporation sold various items, including a 47 acre parcel in Killington, Vermont known as "Property #3, Killington Campus." At issue in this adversary proceeding is whether a 30,000 gallon underground propane tank and related piping, situated under Property # 3, was sold pursuant to that Sale Order and thus became the property of the purchaser, Plaintiff Nanak Hospitality, LLC. In April, 2007, the Plaintiff initiated this adversary proceeding and subsequently filed a motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c) as incorporated by Bankruptcy Rule 7012(c). The Plaintiff asks the Court to declare that its purchase of Property #3 included the tank and piping, and to enjoin the Defendant from interfering with Plaintiff's quiet enjoyment of the property (doc. # 15). Defendant Haskins Gas Service, Inc. filed an answer and counterclaim (doc. # 4), asserting that the tank and piping belonged to it, were not part of the bankruptcy estate, and therefore had not become part of the realty sold under the Sale Order. The Defendant opposed the Plaintiff's Rule 12(c) motion, and filed a cross-motion for judgment on the pleadings, a motion to dismiss under Rule 12(b)(1), and a motion for relief under

Rule 60(b)(6) (doc. # 29). For the reasons that follow, the Court denies the cross-motions for judgment on the pleadings, the Rule 12(b)(1) motion, and the Rule 60(b)(6) motion.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding and the pending motions pursuant to 28 U.S.C. § 157(b)(2)(I). Further, pursuant to the May 25, 2004 Sale Order, the Court retained jurisdiction "for the purpose of enforcing the provisions of the Sale Order and resolving disputes." (See Sale Order attached as Ex. A. to Pl.'s Compl. (doc. # 1).)

## BACKGROUND

Pursuant to Rule 12(c), as set forth below, the Court must accept all pleadings in the Plaintiff's complaint – and because the Defendant has cross-moved under Rule 12(c), all pleadings in the Defendant's Counterclaim – as true.

A.   Plaintiff's Contentions

According to the Complaint, on July 24, 2000, the Defendant and Debtor "entered into a contractual arrangement for Defendant to sell propane fuel to debtor"; in December 2000, the "Defendant installed a 30,000 gallon propane tank at Property # 3 with underground piping as part of the heating system for the property" (doc. # 1, ¶¶ 8, 9). The tank, weighing 43,212 pounds (empty), was 70 feet long and 11 feet in diameter; it was mounted on a concrete slab approximately 15 feet below grade and was secured by tie down straps and connected to furnaces in the buildings on the property and then buried. Id. at ¶¶ 10, 11. Prior to the Debtor filing a chapter 11 petition on December 16, 2002, the Defendant had not filed notice of any interest it claimed in the tank and piping. Id. at ¶¶ 12, 13. In its petition, the Debtor scheduled the Defendant as an unsecured, non-priority creditor on Schedule F[1]; the Defendant was served with notice of the filing but did not appear or file a proof of claim. Id. at ¶¶ 13, 14. When the Debtor's case was converted to chapter 7 in March 2004, the Defendant was also served with that notice. Id. at ¶ 15.

On May 3, 2004, the chapter 7 Trustee filed a motion seeking to sell Property #3 free and clear of liens. Although the Defendant was served with notice of that motion, it did not appear or object to the motion. Id. at ¶¶16, 17. The Court approved the sale in its May 25, 2004 Sale Order and confirmed the sale in a May 27, 2004 Order. The Defendant did not appeal either Order. Id. at ¶¶ 18, 19. Without applying for a lift say order, the Defendant filed a UCC-1 Financing Statement with the Vermont Secretary of State on June 17, 2004 alleging that it had a security interest in the tank. Id. at ¶¶ 20, 21. On June 29, 2004, the Trustee conveyed Property #3 to Plaintiff by quitclaim deed. The Trustee filed his final account and distribution on January 29, 2007, and served the Defendant with notice. The Defendant did not enter an appearance or object. Id. at ¶¶ 22-24. The Trustee "did not show Defendant participating in

---

[1] The Debtor's Schedule F shows that the Defendant was scheduled for an "unknown amount" (doc. # 1, Ex. E).

the distribution because Defendant did not file a Proof of Claim as an unsecured creditor or as an entity having an interest in the proceeds of Property #3." Id. at ¶ 25. On February 15, 2007, the Defendant gave Plaintiff notice of its title claim for the tank and related piping. Id. at ¶ 26.

B.    Defendant's Contentions

In its Counterclaim, after denying that this Court had jurisdiction over this matter and denying that this matter was a core proceeding, the Defendant asserted that "[t]he tank in question and all related equipment and piping, and the two heaters . . . and their piping, were not part of the Debtor's bankruptcy estate and Debtor never asserted or claimed any interest therein or that they had become part of the realty by exception or otherwise" (doc. # 4, Counterclaim ¶¶ 2, 3). The Defendant further stated that the Debtor "always agreed that said tank and other items alleged therein were the property of the Defendant, free and clear of any claim by Debtor and assured Defendant that the Chapter 11 and Chapter 7 proceedings had no application to Defendant." Id. at ¶ 4. Debtor's Schedule F related to claims by Defendant for propane fuel deliveries "but Debtor was always fully paid up as to propane deliveries and Defendant had no claim therein; and Debtor agreed expressly and impliedly that it had no claim against the tank and piping. Accordingly, Defendant was not required to respond to Debtor's bankruptcy filings, either as a Chapter 11 proceeding or as a Chapter 7 proceeding." Id. at ¶ 5. Moreover, the Defendant contended that it was assured by the Chapter 7 Trustee that: (a) the tank and related items were not part of the sale and would not be passed under any sale order or warranty deed, and (b) it had no obligation to respond to any aspect of the sale orders or motions since its property was not subject of the sale orders. Id. at ¶ 6. The Defendant "gave repeated notice to Plaintiff . . . that Defendant owned the said property; and Plaintiff agreed expressly through its duly authorized agents with Defendant's claim of ownership. Said notices of ownership were given to Plaintiff as soon as Defendant ascertained Plaintiff's identity as purchase of Property No. 3." Id. at ¶ 7. In addition, the Defendant stated that the first indication it had that Plaintiff claimed any facts to the contrary was when it attempted to remove its equipment because of Plaintiff's failure to pay its propane bills, in late 2006 and early 2007, at which time Plaintiff sent a "no trespass" notice to Defendant. Id. at ¶ 8.

## PROCEDURAL HISTORY

In addition to the motions at issue, the Defendant filed a motion to compel discovery (doc. ## 37, 46). The Plaintiff opposed the motion, and moved to strike portions of the Defendant's motion (doc. # 41). After oral argument on the motions, which took place on November 15, 2007, the Court denied the motion to compel, granted the motion to strike, and denied attorney's fees to Plaintiff. The Court issued an Order memorializing those holdings on November 20, 2007 (doc. # 49).

3

## DISCUSSION

**I.    The Rule 12(b)(1) Motion**

    A.    Rule 12(b)(1) Standard

Fed. R. Civ. P. 12(b)(1), incorporated in Bankruptcy Rule 7012, allows a party to assert a defense based on "lack of jurisdiction over the subject matter." The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. Luckett v. Bure, 290 F.3d 493, 497 (2d Cir.2002). After "[c]onstruing all ambiguities and drawing all inferences" in the plaintiff's favor, Makarova v. United States, 201 F.3d 110, 113 (2d Cir.2000), the Court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it "lacks the statutory or constitutional power to adjudicate it." Id.

    B.    Application

Although it has filed a motion challenging the Court's subject matter jurisdiction over this adversary proceeding, the Defendant has at the same time acknowledged that "[t]his Court has jurisdiction to determine whether an asset is an estate asset" (doc. # 29, p. 16). That question lies at the heart of the adversary proceeding, and thus the Defendant has, in fact, assented to the Court's subject matter jurisdiction.

The Defendant contends that "[s]ince there is no claim by the Trustee here of any interest in the System, and the System is not an estate asset, the Court lacks jurisdiction." Id. The Defendant conclusorily assumes that the tank and piping are not estate assets, but it is the Court that must render judgment on that key point. Because the Defendant has acknowledged the Court's subject matter jurisdiction over the dispositive question in this adversary proceeding, the Court denies the Defendant's Rule 12(b)(1) motion.

**II.    The Rule 12(c) Cross-Motions**

    A.    Rule 12(c) Standard

        1.    The Language of the Rule

Rule 12(c) of the Federal Rules of Civil Procedure, as adopted by Bankruptcy Rule 7012(c), reads:

> **Motion for Judgment on the Pleadings.** After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

The language of the Rule is succinct and presents two issues for courts to consider: timing and possible reclassification as a motion for summary judgment. The first sentence of the Rule addresses the time within which a motion for judgment on the pleadings may be brought, i.e., after the pleadings are closed but within such time as not to delay the trial. The second sentence of the Rule addresses the circumstances under which a motion for judgment on the pleadings is to be treated as a motion for summary judgment, i.e., when matters outside the pleadings have been presented and have not been excluded by the court.

Here, the Plaintiff moved for judgment on the pleadings after it had filed the Complaint and after the Defendant answered. Since a trial had not yet been scheduled, the Plaintiff's motion did not delay a trial. Accordingly, the Plaintiff has satisfied the Rule's stated time-frame. The same reasoning and result apply to the Defendant's cross-motion for judgment on the pleadings.

Therefore, the Court turns to its next consideration, i.e., the possible reclassification of the motion as a motion for summary judgment. "Documents attached to the complaint as an exhibit or incorporated by reference, matters of which the court may take judicial notice, or documents either in [movant's] possession or of which [movants] have knowledge of and relied upon in bringing suit," are not considered "outside the pleadings." Four Directions Air, Inc., v. United States, 2007 WL 2903942, at *2 (N.D.N.Y. Sept. 30, 2007) (citing Brass v. Am. Film Tech., Inc., 987 F.2d 142, 150 (2d Cir. 1993)); see also Roth v. Jennings, 489 F.3d 599, 509 (2d Cir. 2007) (instructing that document upon which movant relies and which is integral to the complaint may be considered by court). Thus, those documents attached to Plaintiff's Complaint (doc. # 1) and Motion (doc. # 15) will be considered by this Court in ruling on the Plaintiff's Rule 12(c) Motion.

The Defendant did not attach any documents to its Counterclaim (doc. # 4), but it did attach an affidavit from Vickie B. Haskins, Vice-President and Co-Owner of Defendant Haskins Gas Service, Inc., as well as exhibits to the affidavit, to its cross-motion for judgment on the pleadings (doc. # 29). The Court explicitly declines to consider the affidavit because it was generated almost three months after the Counterclaim was filed in order to support the Rule 12(c) motion. Since it could not have been relied upon in bringing the Counterclaim, it is outside the pleadings.[2] The Court will consider the documents attached to the Haskins affidavit, as they pre-existed the Counterclaim and were arguably relied upon by the Defendant in bringing its Counterclaim. Since the Court excludes the Haskins affidavit in resolving the cross-motions pursuant to Rule 12(c), and considers only on the documents relied upon by the parties in bringing suit, it will not convert the Rule 12(c) cross-motions to motions for summary judgment.[3]

    2.     Case Law Interpretation of Rule 12(c)

Wright and Miller provide a helpful overview of the role of a 12(c) motion:

> The federal courts have followed a fairly restrictive standard in ruling on motions for judgment on the pleadings. Although the motion may be helpful in disposing of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further, thereby easing crowded trial dockets in the federal district courts, hasty or imprudent use of this summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense. The importance of this policy has made federal judges unwilling to grant a motion under Rule 12(c) unless the movant clearly establishes that no mate-

---

[2] Furthermore, a great deal of the material contained in the affidavit is speculative, conclusory, and is not based on the personal knowledge of the affiant.

[3] This position comports with the Court's statements to the parties at the November 15, 2007 hearing on the motions to compel and strike.

rial issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.

Charles Wright & Arthur Miller, 5C Fed. Pac. & Proc. Civ. 3d § 1368.

A Rule 12(c) motion for judgment on the pleadings is to be evaluated like a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). See, e.g., Cleveland v. Caplaw Enter., 448 F.3d 518, 521 (2d Cir. 2006); Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004); Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998). Second Circuit case law directs lower courts, when deciding motions for judgment on the pleadings, to "accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to [the non-movant], and construe the complaint liberally." Roth, 489 F.3d at 509-10.

In Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1974 (2007), the Supreme Court clarified that, in order to survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Id. The Second Circuit subsequently explained that the Bell Atlantic ruling did not change the Rule 8 pleading standard: rather, the Supreme Court now requires "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 159 (2d Cir. 2007). With this in mind, dismissal under Rule 12(c) "is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). Accord Burns Int'l Sec. Serv. v. Int'l Union, United Plant Guard Workers of Am., 47 F.3d 14, 16 (2d Cir. 1995).

B. Application

The same rationale compels denial of both the Plaintiff's and the Defendant's respective motions for judgment on the pleadings: a material fact, namely who owned the tank at the time the Debtor filed for bankruptcy relief, is in dispute. If, as the Plaintiff contends, the Debtor owned the tank as of the bankruptcy filing date, then the tank would have been part of the bankruptcy estate and sold pursuant to the Sale Order. On the other hand, if the Defendant owned the tank, then it would not have been part of the estate and could not have been conveyed in the Sale Order. Ascertaining that key fact is integral to the dispute, and none of the documents relied upon by either party resolve that issue. For example, although the Plaintiff refers to a July 24, 2000 document from the Defendant to the Debtor as a "contractual arrangement," (doc. # 15, ¶ 8), and Defendant refers to that same document as a "Supply Contract" (doc. # 29, p. 3), the document is entitled "Revised Proposal" and is signed only by the Defendant. Moreover, it provides two alternatives for how the Debtor will pay for the "installed cost of the piping, regulators, underground 30,000 gallon propane tank, permit fees, labor, and miscellaneous materials for the installa-

tion," and indicates that the Defendant expects to hear from the Debtor as to which option it will choose[4] (doc. # 1, Ex. D; doc. # 29, Ex. 2 to Haskins Aff.). While this document provides some evidence that the parties might have contemplated that the Debtor would purchase the tank (as the equipment "would be paid off when enough gas had been used"), it is by no means dispositive of the ownership issue, as it is only a proposal, not a contract, and it is not signed by the Debtor.

In Vermont, construction of a contract is generally a matter of law. Housing Vt. v. Goldsmith & Morris, 165 Vt. 428, 430, 685 A.2d 1086, 1088 (Vt. 1996). In order for a writing to be considered a contract, "the offer and acceptance must be concurrent and there must be mutual manifestations of assent or a 'meeting of the minds' on all essential particulars." Evarts v. Forte, 135 Vt. 306, 309, 376 A.2d 766, 768 (Vt. 1977). Those items are missing from the July 24, 2000 proposal. Accordingly, where there appears to be only an ambiguous writing, and not an actual contract,

> "the proper interpretation becomes a question of fact, to be determined on all relevant evidence." New England P'ship v. Rutland City Sch. Dist., 173 Vt. 69, 77, 786 A.2d 408, 415 (2001) (internal quotations omitted); Bixler v. Bullard, 172 Vt. 53, 58, 769 A.2d 690, 694 (2001) (intent to be bound by contract is question of fact); Housing Vt., 165 Vt. at 430, 685 A.2d at 1088 ("[W]here the meaning of a contract is uncertain, the intent of the parties becomes a question of fact."); see also Isbrandtsen v. N. Branch Corp., 150 Vt. 575, 579, 556 A.2d 81, 84-85 (1988) (when ambiguity found, "court may then rely on subordinate rules of construction in order to interpret the meaning of the disputed terms").

Bergeron v. Boyle, 176 Vt. 78, 84-85, 838 A.2d 918, 924-25 (Vt.. 2003). Also, because there is no contract, title cannot pass pursuant to 9A V.S.A. § 2-401. This statute, relied upon by the Plaintiff, provides in part that:

> (1) Title to goods cannot pass under a contract for sale prior to their identification to the contract (§ 2-501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this title. Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest. Subject to these provisions and to the provisions of the article on Secured Transactions (article 9), title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties.

---

[4] The text of the July 24, 2000 "Revised Proposal" from Peter Haskins, President of Haskins Gas Service, Inc. to Bernie Rome, Killington Center for the Arts, is as follows:
> WE would provide gas service to your project for the wholesale posted price on the day of delivery plus $.10 per gallon ($.05 transportation and $.05 gross profit) there would be an added cost on top of this price to cover the installed cost of the piping, regulators, underground 30,000 gallon propane tank, permit fees, labor, and miscellaneous materials for the installation. Using an estimated cost of $90,000.00 this would require either monthly payments of $1189.36 which is $90,000.00 for 10 years @ 10% interest rate, which includes a ten year supply agreement, or we could add $.10 per gallon to the gas price and be indefinite length contract that the supply agreement would end and the equipment paid off when enough gas had been used. Credit terms on the gas deliveries are the industry standard of 10 from the date of delivery. With either choice you may terminate the contract within 30 days written notice and paying the remaining balance of the equipment cost at that time. We look forward to doing business with you, and shall wait to hear from you.

> (2) Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place; and in particular and despite any reservation of a security interest by the bill of lading.

These provisions rely on the terms of a contract to clarify the positions of the parties. The "Purpose" section of 9A V.S.A. § 2-401 explains that "This Article deals with the issues between seller and buyer in terms of step by step performance or non-performance under the contract for sale and not in terms of whether or not "title" to the goods has passed" and "[t]he factual situations in subsection[ ] (2) . . . upon which passage of title turn actually base the test upon the time when the seller has finally committed himself in regard to specific goods." 9A V.S.A. § 2-401, Purpose Sections (1) and (4). As indicated above, there was no contract here and no document shows when the seller "finally committed [it]self" with regard to the various goods.

The parties variously characterize the tank and related piping as "removable trade fixtures" (doc. # 36, p. 3), a bailment or agreed removable item (doc. # 29, p. 14), and real estate fixtures, improvements, or appurtenances (doc. # 15, pp. 10, 11). However, the Court cannot rule on such characterizations, given the absence of evidence concerning the terms of the agreement between the parties or their intentions. See Sherburne Corp. v. Town of Sherburne, 124 Vt. 481, 484, 207 A.2d 125, 127 (Vt. 1965) (noting that the third item in the test concerning whether an item if a fixture, classified as real estate, or a trade fixture, classified as personal property, involves a determination of the intention of the parties); In re STN Enters., Inc., 44 B.R. 512, 515 (Bankr. D.Vt. 1984) (observing that a bailment involves delivery of personal property "by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished or kept until the bailor reclaims it."); Rowe v. Lavanway, 904 A.2d 78, 83 (2006 VT 47 (Vt. 2006) (discussing appurtenances in the context of an appurtenant easement and holding that grantor's intent is determinative, as reflected in the wording of the deed); Black's Law Dictionary (8th ed. 2004) (defining improvement as "an addition to real property, whether permanent or not; esp. one that increases its value or utility or that enhances its appearance).

Given the absence of any statute or case law that bears directly on the issue of the ownership of propane tanks, the question will have to be resolved on the facts. The facts concerning ownership are unequivocally in dispute at this point and therefore the Court must deny both the Plaintiff's and Defendant's Rule 12(c) motions. On the current record, it appears that in order to resolve this adversary proceeding, the Court will need to hold an evidentiary hearing to ascertain the intentions of the parties and determine ownership of the tank.

### III. The Rule 60(b)(6) Motion

    A.    <u>The Rule 60(b)(6) Standard</u>

Fed. R. Civ. P. 60(b)(6), incorporated in Bankruptcy Rule 9024, and applicable to adversary proceedings, provides that "the court may relieve a party . . . from a final judgment, order, or proceeding for … (6) any other reason justifying relief from the operation of the judgment." A motion based on Rule 60(b)(6) must be brought "within a reasonable time," Fed.R.Civ.P. 60(b), and relief is only appropriate under clause (6) "in cases presenting extraordinary circumstances," <u>Rodriguez v. Mitchell</u>, 252 F.3d 191, 201 (2d Cir.2001), or where the judgment may work an "extreme and undue hardship." <u>Montco, Inc. v. Barr</u> (<u>In re Emergency Beacon Corp.</u>), 666 F.2d 754, 759 (2d Cir.1981). "In determining whether a movant has met its burden under Rule 60(b)(6), relevant considerations include: (1) the desire to resolve disputes on their merits; (2) the existence of a meritorious claim or defense; and (3) the absence of unfair prejudice to the opposing party if the requested relief is granted." <u>In re Teligent, Inc.</u>, 326 B.R. 219, 227 (S.D.N.Y. 2005). Moreover, "a motion under Rule 60(b)(6) is not a substitute for a timely appeal…" <u>Id</u>.

    B.    <u>Application</u>

By way of its Rule 60(b)(6) motion, the Defendant seeks relief from the May 2004 Sale Order.[5] ("The Defendant rests on the numerous authorities cited as to the equitable power of this court to relieve the Defendant under Rule 60(b)(6) of the Federal Rules of the consequences of its failure to challenge the alleged sale in this case of its interest in the System." (doc. # 36 p. 5)). The Defendant asserts that it had established "extraordinary circumstances" and "extreme and undue hardship," based on the averments in the Haskins Affidavit, which this Court is not considering at this time. As a result, the motion is unsupported and must be denied on that basis.

Moreover, the Defendant brings the motion more than three years after the Order from which it seeks relief was entered. Such a time frame is not reasonable under Rule 60(b)(6) and the Court denies the motion on that alternate basis as well. <u>See</u> <u>In re Hammer</u>, 940 F.2d 524, 526 (9th Cir. 1991) (two year delay unreasonable); <u>Duane Reed, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 466 F.Supp.2d 560, 563 (S.D.N.Y. 2006) (15-month delay unreasonable); <u>Moses v. United States</u>, 2002 WL 31011864 at *2 (S.D.N.Y. Sept. 9, 2002) (collecting cases where delays ranging from 10-20 months following decision found unreasonable under Rule 60(b)(6)).

### IV. Remaining Arguments

The Court has considered the Plaintiff's and the Defendant's remaining arguments and finds them to be without merit.

---

[5] The Defendant takes an interesting position in its Rule 60(b)(6) motion by implicitly acknowledging that its interest in the tank is controlled by the Sale Order, while at the same time it argues that the Sale Order did not dispose of its interest in the tank.

## CONCLUSION

For the reasons set forth above, the Plaintiff's Motion for Judgment on the Pleadings is denied, the Defendant's Cross-Motion for Judgment on the Pleadings is denied, the Defendant's Rule 12(b)(1) motion is denied, and the Defendant's Rule 60(b)(6) motion is denied.   The adversary proceeding will proceed to trial on the merits.

This constitutes the Court's findings of fact and conclusions of law.  A separate order shall be issued setting forth an amended schedule to move this adversary proceeding forward.

_____

December 3, 2007  
Rutland, Vermont

Colleen A. Brown  
United States Bankruptcy Judge

10