**UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT**

| | | |
|---|---|---|
| In re:<br>    Rome Family Corporation,<br>                Debtor. | | Chapter 7 Case<br># 02-11771 |
| **Nanak Resorts, Inc.,**<br>                Plaintiff,<br>    v.<br>**Haskins Gas Service, Inc.,**<br>                Defendant. | Filed & Entered<br>On Docket<br>March 31, 2010 | Adversary Proceeding<br># 07-1010 |

*Appearances:*    James B. Anderson, Esq.            Richard A. Lang, Jr., Esq.
                  Ryan, Smith & Carbine, Ltd.        Bauer, Gravel, et al
                  Rutland, Vermont                    Burlington, Vermont
                  *For the Plaintiff*                 *For the Defendant*

**MEMORANDUM OF DECISION
DENYING DEFENDANT'S MOTION TO RECONSIDER AND
DENYING DEFENDANT'S MOTION TO VACATE SALE ORDER UNDER RULE 60(B)**

On June 24, 2009, this Court entered a memorandum of decision that granted the Plaintiff's motion for summary judgment with respect to ownership of the heating system at issue in this proceeding (the "System"), and granted in part and denied in part the Defendant's cross-motion for summary judgment. The Court presumes familiarity with the facts and procedural circumstances of the sale at issue in this adversary proceeding, as they were set forth in detail in previous decisions. See doc. ## 106, 107. For the sake of expedience, the Court sets out below the portion of the June 24, 2009 decision that set the stage for the motion currently before the Court:

> Accordingly, Nanak's motion for summary judgment, to the extent that it seeks a declaration that it owned the System, free and clear of any lien or interest of Haskins, is granted and, on that issue, Haskins's Cross-Motion for Summary Judgment is denied. However, that does not dispose of all legal issues raised by the instant cross-motions.
>
>     VI.    ADDITIONAL ARGUMENTS AND CONSIDERATIONS
>
> Haskins has raised a number of equitable arguments. One in particular deserves the Court's attention. Haskins contends that the notice of sale and sale orders did not provide clear, conspicuous, and accurate notice of what was being sold (as opposed to traditional notice/due process issues concerning whether all parties had been given adequate or proper notice that a sale would be taking place) (doc. # 87 p. 12). In essence,

1

Haskins claims it was entitled to be alerted by both the Debtor and the Trustee that the Debtor owned the System, that it was included in the assets offered for sale and, in the absence of such notice, justice requires that the rights and duties of all parties to the transaction be adjusted accordingly. In this regard, Haskins points out that if the System had been owned by the Debtor from the time of delivery, then the Debtor had a duty to list the System in its schedules and disclose it on its statement of financial affairs, and the Trustee had a duty not only to identify it as an asset in the sale notice but also to ensure that the price paid was sufficient to compensate the estate for this specialized equipment.[13] Haskins accurately observes that these duties were not fulfilled. See Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 616 (9th Cir. 1988) ("The debtor has the clear responsibility of scheduling those assets that arguably belong to the estate. . . It is then up to the creditors to decide whether to challenge the debtor's position and up to the court to resolve any such challenge. The debtor . . . must be scrupulous in providing notice of all assets to which others may make a legitimate claim.") (citation omitted).

[13] The documents that one would have expected to provide this detail do not do so. For example, the various deposition transcripts reflect that both Haskins and the Debtor understood that Haskins rather than the Debtor owned the System and this is consistent with the Debtor not including the System as an asset in the Debtor's schedules and not disclosing it in the statement of financial affairs as an asset of Haskins's that the Debtor had in its possession. Moreover, the deed did not identify the personal property being sold and the post-sale appraisal – the only appraisal in the record – was unclear as to whether the System was included. Nothing in the Trustee's application to sell or notice of sale makes any reference to the System as either included in or excluded from the sale.

Haskins's notice/due process argument arises in a procedural thicket because: (a) up to and after the date of sale, all parties were operating under a mistaken belief that Haskins owned the System; (b) under state law, title to the System actually transferred to the Debtor upon delivery; (c) nothing in the record before the Court disclosed that the System was included in the property the Trustee sold; (d) the res of assets sold appears to have included the $90,000 System, even though no party to the transaction knew it at the time; (e) the determination of who held legal title to the System when the case was filed and when the Debtor's property was sold was not made until eight years after the System had been delivered, seven years after the Debtor had filed for bankruptcy relief, and five years after the sale; and (f) this decision is, in effect, retroactive. It is also noteworthy that if anyone had raised the issue of ownership, or alleged that the Debtor owned the System, at or prior to the hearing on approval of the sale, and hence that a "hidden asset" in the form of a $90,000 heating system was also included in the sale, it is quite likely that this revelation would have triggered an inquiry by the Court as to the adequacy of the sale price.[14]

[14] At the hearing held to approve the sale, this Court rejected the Trustee's motion to approve Nanak's purchase of the Killington Campus, finding that the price it was offering was too low. In response to that ruling, Nanak increased its offer by a quarter of a million dollars. The Court found this price to be sufficient and confirmed the sale to Nanak for the higher price (doc. # 81, Canney dep. p. 17).

Now that the Court has determined that title in the System shifted to the Debtor upon delivery, Haskins's notice/due process arguments must be reframed to correspond to the relief available under these facts. There are only two ways to challenge a § 363 sale order. The first is by direct appeal, as referenced in § 363(m).[15] The Sale Order in

this case was not appealed, and thus, as Nanak correctly points out, relief under § 363(m) is not available. The other way to challenge a § 363 sale order is via a motion to vacate the judgment under Rule 60(b), as incorporated in Fed. R. Bankr. P. 9024. This latter approach is not barred by res judicata. See Gekas v. Pipin (In the Matter of Met-L-Wood Corp.), 861 F.2d 1012, 1016 (7th Cir. 1988).

> [15] Section 363(m) provides: "The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

While relief pursuant to Rule 9024 and Rule 60(b) is an extraordinary remedy, in light of the unforeseen shift in ownership of the System, the failure of key parties to fulfill their statutory duties, the amount of time that elapsed between the sale and the determination of ownership, and the overall equities of this case, the Court will entertain an amended memorandum of law from Haskins and corresponding motion that frames Haskins's arguments for vacatur of the Sale Order in the context of Rule 60(b)(4) and (b)(6)[16] (and any other subsection of Rule 60(b) that Haskins believes to be applicable), and a responsive memorandum of law from Nanak. Then, the issue will be before the Court in a posture that would permit it to address the due process and equitable arguments related to notice raised by Haskins's cross-motion for summary judgment, and to determine whether Haskins has established a sufficient legal basis to invalidate the sale of the Killington parcel.[17] See, e.g., Polycel Structural Foam, Inc. v. Pool Builders Supply of the Carolinas, Inc. (In re Polycel Liquidation, Inc.), 2007 WL 77336 at * 6-9 (D.N.J. Jan. 8, 2007).

> [16] Rule 60(b) (4) and (6) provide that "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . .(4) the judgment is void. . . (6) any other reason that justifies relief."
>
> [17] A Rule 60(b) motion raises the possibility that sale of the Killington Campus parcel would be vacated (without vacating the sale of the other parcels sold pursuant to the Sale Order). If that occurred, Haskins, Nanak, and the estate would be returned to the status quo ante as it existed on the date of filing (but with full knowledge that the Debtor owned the System), and matters would proceed from there (concerning supplementing the Debtor's schedules to reflect that ownership; re-noticing of the sale, including notice to Haskins, the Trustee's right to bring an action to determine ownership of the System, etc.). The Court is also cognizant that it denied Haskins's Rule 60(b)(6) motion in its December 2007 decision, finding that it was unsupported based on the facts then before the Court. In re Rome Family Corp., 2007 WL 4244697 at * 8. In addition, the Court denied the Rule 60(b) motion on the alternate ground that it was untimely. Id. In the process of adjudicating the instant motions, the Court has had the benefit of new facts and arguments and has reconsidered the procedural history in this case. Furthermore, this decision, with its retroactive effect, creates an entirely new factual context for the legal arguments proffered by the parties. The Court finds that another Rule 60(b) motion would not be untimely. Rather than viewing the 2004 Sale Order as the starting point for counting the passage of time from which the Defendant moved for a declaration that it owned the System, the Court views the instant decision – which determines that the Debtor owned the System at the time of the sale and that the System was conveyed by the sale – as the point at which the Rule 60(b) clock starts running, since it is this Order, rather than the Sale Order, that resolves whether the System was included in the sale.

In sum, the Court finds that Haskins is entitled to its day in court to argue its rights and applicable remedies with respect to the sufficiency of the sale notice, in light of the factual and legal determinations made in this decision.

Doc. # 106, at 13–16 (footnotes in original).

## JURISDICTION

The Court has jurisdiction over this adversary proceeding and the instant motions pursuant to 28 U.S.C. § 157(b)(2)(A) and (N), and pursuant to this Court's May 2004 Order Authorizing Sale ("Sale Order") (Case # 02-11771, doc. # 182), in which the Court specifically retained jurisdiction "for the purpose of enforcing the provisions of the Sale Order and resolving disputes." See doc. # 1, Ex. A.

## DISCUSSION

The Defendant filed the instant motion to reconsider on July 2, 2009 (doc. # 110). In its motion to reconsider, the Defendant argues that since the Debtor failed to disclose the System in its schedule of assets and in its statement of financial affairs and also failed to list the Defendant as a party claiming a security interest in the System in its schedule of creditors, and since the Trustee failed to specifically identify the System as part of what was being sold, the principle of claim preclusion arises, barring the Trustee from selling the System as part of the bankruptcy estate and barring the Plaintiff from now arguing that the System was an asset of the estate. The Defendant further argues that since the Defendant had a second and distinct contract with the Plaintiff, the determination of the Defendant's contract rights with respect to the System must be determined based upon the post-petition contract between the Defendant and Plaintiff. See doc. # 110, p.7. The Defendant filed a supplement to the motion to reconsider on July 2, 2009 (doc. # 111), seeking the return of two portable heaters it claims to have loaned to the Debtor. See doc. # 111, p.1.

On July 13, 2009, the Defendant filed the instant motion to vacate the Sale Order under Rule 60(b) (doc. # 113) ("Motion to Vacate"). In its Motion to Vacate, the Defendant argues that since it did not have sufficient notice of the content of the sale, and since the Trustee lacked knowledge of the Defendant's claim to the System and of the System's value at the time of the sale, the May 25, 2004 sale order, and May 27, 2004 order confirming the sale should be vacated pursuant to Rule 60(b)(1), (b)(4), and/or (b)(6), as made applicable by Bankruptcy Rule 9024. The Defendant further argues that it is entitled to attorney's fees and expenses under 11 U.S.C. § 503(b)(3) and (4).[1]

For the reasons set forth below, the Defendant's motion to reconsider, the Defendant's supplement to the motion to reconsider, and the Defendant's motion to vacate the sale order under Rule 60(b) are all denied. Consequently, the Defendant's request for attorney's fees and expenses under § 503(b) is also denied.

---

[1] Unless otherwise specified, all statutory citations refer to Title 11 of the United States Code (the "Bankruptcy Code").

4

Rule 60(b) provides, in pertinent part, that:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
    (1) mistake, inadvertence, surprise, or excusable neglect;
    (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
    . . .
    (4) the judgment is void;
    . . .
    (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

The law is settled that an order entered by a bankruptcy court approving the sale of assets under § 363(b) is a final order. See Corbett v. MacDonald Moving Servs., 124 F.3d 82, 89 (2d Cir. 1997); In re Met-L-Wood Corp., 861 F.2d 1012, 1018 (7th Cir. 1988); United States v. Vickers (In re Fortier), 315 B.R. 829, 832 (W.D. Mich. 2004). "Ordinarily, 'the finality of [a] Bankruptcy Court's orders following the conclusion of direct review' would 'stan[d] in the way of challenging [their] enforceability.'" United Student Aid Funds, Inc. v. Espinosa, 2010 U.S. LEXIS 2750, *17, 2010 WL 1027825, *6 (Mar. 23, 2010) (quoting Travelers Indemnity Co. v. Bailey, 129 S.Ct. 2195, 2198 (2009)). Rule 60(b) is an exception to finality. Gonzalez v. Crosby, 545 U.S. 524, 528–29 (2005).

"A sale under section 363(b) that fails to comply with the notice or hearing requirements of the statute and the applicable bankruptcy rules is invalid and may be set aside on appeal. But it is not void." Met-L-Wood Corp., 861 F.2d at 1018. Once the order is final, the way to obtain relief is via Rule 60(b). Lawrence v. Wink (In re Lawrence), 293 F.3d 615, 622 and n.5 (2d Cir. 2002). Bankruptcy Rule 9024 makes Rule 60(b) relief available in bankruptcy cases. Midkiff v. Stewart (In re Midkiff), 342 F.3d 1194, 1197 (10th Cir. 2003). The Second Circuit in Lawrence dealt with an unusual set of facts involving allegations of securities fraud and emphasized that Rule 60(b) afforded the movants their day in court to try to establish their fraud claims. Lawrence, 293 F.3d at 622, 624–25, and 626. Similarly, this Court offered the Defendant an opportunity to file a Rule 60(b) motion so the Defendant could have its day in court. See doc. # 106, p. 16 (quoted above). However, having one's day in court does not guarantee relief. Rule 60(b) relief is extraordinary, and should only be granted upon a showing of exceptional circumstances. Di Vito v. Fidelity & Deposit Co., 361 F.2d 936, 938 (7th Cir. 1966).

The Defendant seeks to vacate the Sale Order under Rule 60(b)(1) on the ground that the Trustee lacked knowledge of the Defendant's claim to the System, and of the System's value, at the time of

sale. Rule 60(b)(1) is only applicable if the Court finds that the Sale Order was entered on the basis of mistaken information. However, if the mistake in question is an attorney's misunderstanding of the law, that alone is not sufficient to vacate a final order. See In re Poteet Constr. Co., 122 B.R. 616, 620 (Bankr. S.D. Ga. 1990). Additionally, it is clear that, with due diligence, the Defendant could have sought a determination as to ownership of the System, and as to whether the System was included in the assets to be sold, prior to the sale, to correct that mistaken understanding. The Defendant made no effort to do so. Thus, the record does not support a finding that the Defendant is entitled to relief under Rule 60(b)(1).

Since the Defendant's argument could be construed as one dependent upon newly discovered evidence under Rule 60(b)(2), the Court will address the availability of relief under that provision. Rule 60(b)(2) concerns newly discovered evidence that could not have been discovered at the time. See Celli v. First Nat'l Bank (In re Layo), 460 F.3d 289, 292–93 (2d Cir. 2006) (citing Saud v. Bank of New York, 929 F.2d 916, 920 (2d Cir. 1991) (noting general rule that newly discovered evidence does not preclude the application of res judicata, except where the evidence was fraudulently concealed or could not have been discovered with due diligence). The only thing "new" here is the Court's determination of ownership; no new evidence was discovered that led to that determination. Accordingly, relief under Rule 60(b)(2) is unavailable to the Defendant.

The Defendant also seeks to vacate the Sale Order under Rule 60(b)(4), or alternatively under Rule 60(b)(6), on the ground that it did not have sufficient notice. The Defendant specifically argues that the lack of sufficient notice renders the order void and warrants relief under Rule 60(b)(4). United States v. Boch Oldsmobile, Inc., 909 F.2d 657, 661 (1st Cir. 1990). Starting with the question of timeliness, the Court notes that a motion under Rule 60(b)(4) need only be filed within a reasonable time. Lawrence, 293 F.3d at 626–27 and n.10. Here, the Defendant asserted an adverse title claim against the Plaintiff on February 15, 2007 (doc. # 1, ¶ 2), promptly after the Plaintiff notified it that the Defendant would not be permitted on the premises to remove the System, and the Defendant filed the instant Rule 60(b)(4) motion promptly after the Court ruled that title to the System had passed from the Defendant to the Debtor upon delivery. This satisfies the "within a reasonable time" requirement of Rule 60(b)(4). The Defendant's Rule 60(b)(4) motion is thus timely.

The Defendant does not dispute that it had notice of the sale; its position is rather that the notice was insufficient to alert the Defendant to the possibility that the System might be part of the assets being sold. This is critical. It is not the fact of the notice, but the quality of the notice that the Defendant asserts to trigger an examination of the due process criteria. Due process requires "notice reasonably

6

calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306 (1950). Here, the notice to the Defendant indubitably put the Defendant on notice that there would be a sale, but absolutely failed to inform the Defendant at all with respect to whether the System was part of the property being sold. The Court must decide whether that notice afforded the Defendant an opportunity to present its objections. The System was a large asset, quite visible to the eye, and quite essential to operation of the property. The Trustee and potential purchasers ought to have at least considered whether it would be included, and the Defendant could have sought more than just the word of the Debtor principal, who, in the context of a chapter 7 case, was no longer in control or in a position of authority with respect to the sale. Based upon these facts and the entire record in this case, the Court is compelled to conclude that the notice to the Defendant was sufficient to prompt a reasonable party to verify its understanding as to the ownership of the System and inquire about the scope of the sale. Thus, the notice was sufficient to afford the Defendant an opportunity to present its objections. The Defendant has not demonstrated that the notice was so flawed as to rise to the level of a violation of due process. Thus, the Defendant has not shown the sale order is void, and hence may not obtain relief under Rule 60(b)(4).

The Defendant argues, in the alternative, that the notice received was so inadequate as to warrant it having relief under Rule 60(b)(6). It is significant to this Court's analysis that neither the parties nor the Court knew of the ownership misunderstanding at the time the property was being marketed for sale, and that legal ownership of the System could have been determined prior to consummation of the sale, if a party had raised the issue. The Defendant seeks relief from the Sale Order now though it was within its power, and within the scope of reasonable action, for the Defendant to have raised the question of the System's ownership as soon as it learned of the sale. The Court takes this into account as it weighs the Defendant's right to have received more conspicuous notice against the parade of negative consequences that would flow from granting the Defendant's Motion to Vacate.

It is true that the Debtor had a responsibility to list all assets, and that if the Debtor was claiming an ownership interest in the System it should have declared that interest in the schedules and statement of financial affairs; it is also true that the Trustee had a duty to conspicuously state in the notice of sale whether the System was being sold. In re Woodson, 839 F.2d 610, 616 (9th Cir. 1988). However, the Defendant also had a duty to act in a commercially reasonable fashion when it received the notice of sale. While the Defendant may not have had an affirmative duty to conduct an independent investigation of what was being sold, failure to do so carried risks.

7

In balancing the equities, the Court considers the economic harm that will befall the Defendant if the Court leaves the sale intact, on the one hand, and the importance of maintaining the sanctity of final orders to the effective operation of the bankruptcy system and the goal of maximizing distributions to creditors, on the other. See Lawrence, 293 F.3d at 621, n.3 (citing Corbett v. MacDonald Moving Servs., Inc., 124 F.3d at 88–89 (special consideration in bankruptcy context is whether new action will "impair, destroy, challenge, or invalidate the enforceability or effectiveness of the reorganization plan")). As Judge Posner so eloquently put it, "[u]nless bankruptcy sales are final when made, rather than subject to being ripped open years later, high prices will not be offered for the assets of bankruptcy firms—and the principal losers (pun intended) will be unsecured creditors." Met-L-Wood Corp., 861 F.2d at 1019. As in that case, the moving party here has been sedulous in its efforts to remedy the injustice it perceives to have been wrought by this sale.

In exercising its judicial discretion, the Court "must balance the necessity of liberally construing Rule 60(b) so that final orders reflect the true merits of a case and the need for preserving the finality of judgments or orders." Id. (citing Wright & Miller, Federal Practice and Procedure: Civil § 2852. The presumption must be in favor of finality. The party seeking Rule 60(b) relief must demonstrate not only "a factual basis to support relief but also that the harm to the movant truly outweighs the necessity for finality." Id. at 619. The Defendant has had its day in court to present its case and has neither rebutted that presumption in general nor shown that the harm it would suffer under the facts and circumstances of this case outweighs the need to preserve the finality of the Sale Order.

Anticipating that the Court might deny its Motion to Vacate, the Defendant asks the Court to consider granting it relief in a way that would eliminate only a small portion of the order's finality. It points out that the Court has the authority to vacate the Sale Order in part, for a specific and limited purpose, to provide relief that is appropriate under the circumstance. See Midkiff v. Stewart (In re Midkiff), 342 F.3d 1194, 1199 (10th Cir. 2003); see also Polycel Structural Foam, Inc. v. Pool Builders Supply of the Carolinas, Inc. (In re Polycel Liquidation, Inc.), 2007 U.S. Dist. LEXIS 955, *26, 2007 WL 77336, *8 (D.N.J. Jan. 8, 2007). Here, however, even if the Court were to find grounds to void only so much of the Sale Order as purports to transfer title of the System from the estate to the Plaintiff, it would not do unless it would result in a benefit to the Defendant. The Court has previously held that the Defendant transferred title upon delivery of the System, and as of that date the Defendant had no more than the right to perfect a security interest in the System. See doc. ## 106, 107. Thus, as of the filing date, the Defendant had an unperfected security interest in the System, or in other words, the Defendant was the holder of an unsecured claim. The Defendant did not file a proof of claim based

8

upon sale of the System to the Debtor. Therefore, even if the Court were to void the sale of the System, and the Trustee were to sell the System for $90,000 (the value the Defendant assigns to it) and disburse those funds to unsecured creditors, the Defendant would not be compensated for the cost of the System.

The Defendant's reliance upon Polycel is misplaced, as the facts in this case differ from Polycel in three essential ways. First, the court in Polycel found that the asset in question was not property of the estate. Id. at *12–14 and *25–26, *4 and *8. Second, that court found the movant was the owner of the asset in question. Id. Third, the Polycel court held that the movant had not had any notice of the sale. Id. As a result of these three critical findings, the court in Polycel vacated the sale order for the sole purpose of removing the non-estate asset from the res of assets sold, and directed that the asset be delivered to its owner. Id. at *15 and *27-28, *4 and *9. If the System was worth $90,000 on the date of sale, and if the price Nanak paid was not sufficient to include the System, then Nanak received a windfall and the estate suffered a loss in this sale. That is unfair and unfortunate. However, the question is whether it is so unjust as to warrant disturbing the finality of the Sale Order. Obtaining the best price at bankruptcy sales is critical, and setting aside sales lightly is a surefire way to chill bidding and to discourage third parties from bidding the full value of assets at bankruptcy sales. As the Supreme Court recently stated, "expanding the availability of relief under Rule 60(b)(4) is not an appropriate prophylaxis" for bad-faith or improper conduct. Espinosa, 2010 U.S. LEXIS 2750 at *34, 2010 WL 1027825 at *10. More diligent investigations pre-sale and clearer sale notices, for example, may prevent windfalls and sloppy or nefarious conduct at sales. That is a far better approach than to establish a practice that leaves final sale orders vulnerable to being set aside years later.

The Defendant also relies upon Midkiff; such reliance is likewise unavailing. In Midkiff, the trustee inadvertently closed the case and the bankruptcy court entered the order granting the debtors a discharge, prior to the debtors' delivery of their federal tax refund to the trustee, even though that refund was to fund part of the plan. Midkiff, 342 F.3d at 1196–97. When the trustee discovered the error, he requested, and the bankruptcy court granted, vacatur of the discharge order to allow recovery and administration of the tax refund. Id. at 1197. On appeal, the Bankruptcy Appellate Panel and Tenth Circuit affirmed. Id. at 1203. That case is distinguishable from the one at bar, first, because in Midkiff, the vacatur did not harm any party other than the party that had information and failed to disclose it—the debtors. Second, the Tenth Circuit specifically noted that the timing of the debtors' actions offered grounds for suspicion they were trying to terminate the plan before their tax refund was received in order to keep the money and that, regardless of the debtors' motives, its decision would

9

prevent future ill-motivated debtors from engaging in such a scheme to effectively cheat their creditors. Id. at 1201. The debtors' apparent intent to cheat the estate was a significant factor in the court's analysis; here, there is no evidence that the Debtor intentionally failed to disclose the System as an asset it owned or that any party intended, by their silence, to defraud the court or creditors. Third, in Midkiff, the vacatur and administration of the asset benefited the entire estate. In the instant proceeding, the Defendant has not established that any party would benefit from vacatur of the Sale Order; there is no way of predicting how much any party would pay for the System at this point in time.[2] Moreover, if the Defendant is now a general unsecured creditor, the Trustee acted on its behalf – and on behalf of all general unsecured creditors – when he filed the motion seeking court approval of the sale; the Defendant is thus bound by the Trustee's action. See United States v. Vickers (In re Fortier), 315 B.R. 829, 832–33(W.D. Mich. 2004) ("[The movant] is bound by the actions of the Trustee because she is a creditor of [the debtor's] estate and in entering into the settlement agreement … and selling the [] property, the Trustee acted on behalf of [the movant]").[3]

While the Court is sympathetic to the plight of the Defendant in this case, when it weighs all of the facts and circumstances and takes into account which parties were in a position to make inquiries prior to the sale, the Court must include the Defendant in that group and therefore hold it at least partially responsible for the harm it suffered as a result of the sale. The Court finds the Defendant has failed to demonstrate it is entitled to relief that would disturb the finality of the Sale Order.[4] For the

---

[2] Nor does the Defendant's reliance upon Radack v. Norwegian America Line Agency, Inc., 318 F.2d 538 (2d Cir. 1963), advance its position. In Radack, the district court entered an order of dismissal for failure to prosecute, which it vacated fifteen months later under Rule 60(b)(6). Id. at 540. The issue in Radack was whether, even though "the underlying justification for vacating the dismissal of [the] case [was] inadvertence or excusable neglect, grounds barred under the one-year time limitation" of Rule 60(b)(1), the district court could properly apply Rule 60(b)(6) to grant relief "where lack of notice has operated to prejudice a substantial right or remedy that would otherwise have been available." Id. at 542–43. The Second Circuit in Radack found that, "if notice of the judgment was not sent, the judge has the power, in the exercise of a sound discretion, to grant relief under Rule 60(b)(6)," and remanded the matter to the district court for a factual determination as to whether notice was sent. Id. at 543. The Second Circuit later repudiated its decision in Radack, noting that courts "have required a showing of more than the mere failure to notify the parties that judgment has been entered," and that "prior decisions indicate that a Rule 60(b)(6) motion may not be granted absent some showing of diligent effort by counsel to ascertain the status of the case." Mizell v. Atty. Gen. of N.Y., 586 F.2d 942, 945 n.2 (2d Cir. 1978). Here, the Defendant had notice of the sale and the opportunity to question if or how the System would be affected by the sale, and failed to do so.

[3] In Fortier, the district court held that, notwithstanding the fact that the movant (who was the debtor's ex-spouse) had received no notice of the bankruptcy, did not know of the sale in time to object, and held a claim of higher priority than the party that had been paid the sale proceeds, finality of the sale order controlled. It therefore reversed on the ground that the movant failed to take action within one year of the sale order as required by Rule 60(b)(1)–(3). Fortier, 315 B.R. at 831, 833. The facts presented in this case are not nearly as compelling and do not justify the extraordinary relief provided under Rule 60(b).

[4] See Contrarian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.), 2010 U.S. App. LEXIS 6285, *41, 2010 WL 1135445, *13 (2d Cir. Mar. 26, 2010) ("This holding is consistent with the uniquely important interest in assuring the finality of a sale that is completed pursuant to 11 U.S.C. § 363(b) or (c) in bankruptcy proceedings") (citing Gucci II, 126 F.3d 380, 387 (2d Cir. 1997) (stating that "without this assurance of finality [under section 363(m)], purchasers could demand a

reasons articulated above, the Court denies the Defendant's motion to vacate the Sale Order under Rule 60(b) (doc. # 113).

## MOTION TO RECONSIDER

The Defendant filed a motion to reconsider at about the same time it filed the Motion to Vacate, and offered overlapping grounds for relief. Therefore, the Court addresses the two motions in tandem.

The standard for granting a motion for reconsideration is strict in order to dissuade repetitive arguments on issues that the court has already fully considered "where the moving party seeks solely to relitigate an issue already decided," Schrader v. CSX Transp., 70 F.3d 255, 257 (2d Cir. 1995), to "plug gaps in an original argument or to argue in the alternative once a decision has been made," In re Newberry, 2007 Bankr. LEXIS 2611, *2, 2007 WL 2247588, *1 (Bankr. D. Vt. Aug. 2, 2007), or to "give the moving party another bite at the apple by permitting argument on issues that could have been or should have been raised prior on the original motion." In re Bird, 222 B.R. 229, 235 (Bankr. S.D.N.Y. 1998) (citing Federal Deposit Ins. Corp. v. Meyer, 781 F.2d 1260, 1268 (7th Cir. 1986)). A court may reconsider an earlier decision when a party can point to an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. Marrero Pichardo v. Ashcroft, 374 F.3d 46, 56 (2d Cir. 2004); see also Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (cautioning that, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason [be] permitted, to battle for it again"). A court should grant reconsideration when a "party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court," Shrader, 70 F.3d at 257, but ultimately the question is a discretionary one, and the court is not limited in its ability to reconsider its own decisions prior to final judgment. See Virgin Atl. Airways, 956 F.2d at 1255.

The Defendant seeks reconsideration "to avoid the manifest injustice which would result if the Plaintiff were to wrongly [] be held to be the owner of the System." See doc. # 110, p. 2. The Defendant first argues for reconsideration on the basis that the Court failed to consider one of its key arguments when it rendered the June 24, 2009, decision, namely claim preclusion. Its argument is that under the principle of claim preclusion the Trustee was barred from selling the System as part of the bankruptcy estate and the Plaintiff is estopped from arguing that the System was an asset of the estate. On the merits, the Court finds these arguments to be unpersuasive because relief based upon estoppel is

---

large discount for investing in a property that is laden with the risk of endless litigation as to who has rights to estate property"); In re Rare Earth Minerals, 445 F.3d 359, 363 (4th Cir. 2006) ("Section 363(m) codifies Congress's strong preference for finality and efficiency in the bankruptcy context, particularly where third parties are involved.")).

not available where there was an error on both sides. Commissioner v. Union P. R. Co., 86 F.2d 637, 640 (2d Cir. 1936). Moreover, the Defendant's argument relies on the Debtor's obligation to disclose, but the Defendant fails to point to any evidence in the record showing that either the Debtor or the Trustee knew that the Debtor owned the system, and or that the Defendant took any reasonable steps to obtain a definitive statement from the Trustee about whether the System was included in the sale. For these reasons, the Court denies reconsideration on the basis of this argument.

The Defendant also asserts in the motion to reconsider that the Defendant's contract rights with respect to the System must be determined based upon the separate post-petition contract between the Defendant and the Plaintiff. In its cross-motion for summary judgment, the Defendant argued that the Plaintiff's claim to the System should have been brought in Vermont state court because the separate post-petition contract between the Defendant and the Plaintiff was enforceable even if the System had been sold to the Plaintiff. See doc. # 87, p. 15. The Court found the Defendant's jurisdictional argument to be without merit. See doc. # 106, p. 16. To the extent that the Defendant's argument here differs from the jurisdictional argument raised in its cross-motion for summary judgment, the Defendant's argument is untimely. See Newberry, 2007 Bankr. LEXIS 2611 at *2, 2007 WL 2247588 at *1.

Accordingly, the Defendant's motion to reconsider is denied.

## MOTION FOR RETURN OF HEATERS

As a supplement to its motion to reconsider, the Defendant seeks the return of two portable heaters it claims to have loaned to the Debtor to heat several unfinished buildings until the System was operational. It is unclear why the Defendant did not request return of the heaters from the Trustee prior to complete administration of the estate. Further, the Court does not have sufficient facts before it to determine the exact nature of this dispute or whether the Court has jurisdiction over it. Thus, the Defendant's supplement to the motion to reconsider seeking return of this property is denied without prejudice to the Defendant's right to clarify and re-assert this claim with further facts that establish the nature of the claim and this Court's jurisdiction over it.

## CONCLUSION

For the reasons set forth above, the Defendant's motion to reconsider (doc. # 110), the Defendant's supplement to the motion to reconsider (doc. # 111), and the Defendant's motion to vacate the Sale Order under Rule 60(b) (doc. # 113) are all denied. Consequently, the Defendant's request for attorney's fees and expenses under § 503(b) is also denied.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

March 31, 2010  
Burlington, Vermont

Colleen A. Brown  
United States Bankruptcy Judge